## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **ALISHA A. GARRETT**, ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 08-BE-0736-E** |
| ) | |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of the Social**, ) | |
| **Security Administration** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On January 26, 2005, the claimant, Alisha Garrett, applied for supplemental security income under Title XVI of the Social Security Act. (R. 22). The claimant alleges disability commencing on October 6, 2004 because of back pain, depression, and anxiety. *Id*. The Commissioner denied the claim both initially and on reconsideration. *Id*. The claimant filed a timely request for a hearing before an Administrative Law Judge (ALJ), and the ALJ held a hearing on November 8, 2006. *Id*. In a decision dated April 25, 2007, the ALJ found that the claimant was not disabled as defined by the Social Security Act and thus was ineligible for supplemental security income. (R. 30). On February 25, 2008, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 4). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUE PRESENTED

Whether the ALJ properly applied the Eleventh Circuit's three-part pain standard.

## III. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[1] which can be expected to result in death or which

---

[1] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

has lasted or can be expected to last for a continuous period of not less than 12 months....

To make this determination the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2]

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either*

> (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

## V. FACTS

The claimant has a G.E.D. and was thirty-five years old at the time of the administrative hearing. (R. 252, 54). Her past work experience includes employment as a sanitation worker,

---

[2]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) was a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981)(Unit A).

truck driver, creeler, twister operator, and poultry packer. (R. 22). The claimant originally alleged she was unable to work because of back pain, depression, and anxiety; however, on appeal, the claimant did not contest the ALJ's findings regarding the impact of her depression and anxiety on her ability to work. (R. 22). The claimant testified that injuries from a car accident in her personal vehicle on October 8, 2004 cause her back pain. (R. 264).

*Physical Limitations*

On October 8, 2004, the claimant sustained back injuries when a car rear-ended her personal vehicle. (R. 134). On the day of the accident, x-rays of the claimant's spine indicated no fracture, malalignment, or skeletal lesion. (R. 136-37). On October 29, 2004, an MRI of the claimant's lumbar region showed an annular tear on the left at L4-5 and a central and right-sided disc herniation at L5-S1. (R. 145).

On November 22, 2004, Dr. Karl Hofammann, III, a treating physician at Citizens Baptist Medical Center, examined the claimant. (R. 147). In addition to prescribing Lortab, Dr. Hofammann recommended epidural blocks and back exercises. *Id*. He noted that if the epidural blocks were unsuccessful, he would refer the claimant to a surgeon. *Id*.

On December 29, 2004, Dr. Suzane Cooper, a treating physician and anesthesiologist, examined the claimant. (R. 140). The claimant told Dr. Cooper that her pain was intermittent, but was becoming worse and was currently at a level of ten on a scale of one to ten. *Id*. Dr. Cooper's records indicate that the claimant was taking Lortab and Aleve, and that she had central lumbar pain and left radicular pain. *Id*. Dr. Cooper agreed with Dr. Hofammann that a lumbar epidural steriod injection would benefit the claimant and administered an injection on December 29. *Id*.

On January 12, 2005, the claimant told Dr. Hofammann at a follow-up appointment that

4

she "[did not] want any more of the pain blocks" because "they hurt and [did not] help her any." (R. 146). However, Dr. Hofammann's records indicate that "the shot helped [the claimant] in her low back for a day or so." *Id*. Dr. Hofammann concluded that the claimant's last option was referral to a surgeon, but noted that she was not willing to consider surgery. *Id*. Instead, Dr. Hofammann prescribed physical therapy and recommended that the claimant's primary care physician prescribe Aleve or ibuprofen. *Id*. Dr. Hofammann concluded his report by commenting that "there is really not much else I can do but refer [the claimant] for surgical consideration if and when the problem is bad enough." *Id*.

On January 28, 2005, the claimant visited Dr. Ann Davis, an internist, to establish a primary care relationship. (R. 155). Dr. Davis' records indicate that the claimant was taking Lortab and that her pain was centralized in her lower back region; however, Dr. Davis noted that the claimant did not have pain on palpation of the lumbar region, nor was there any detectable muscle spasm. *Id*. She prescribed Lodine and referred the claimant to physical therapy. *Id*.

On April 10, 2005, the claimant visited the emergency room of Citizens Baptist Medical Center complaining of chronic back pain. (R. 194). Although the emergency physician records indicate that the claimant's pain was exacerbated by movement and could not be relieved, they also note that the claimant was oriented, that her general appearance indicated no acute distress, and that the severity of her back pain was moderate. (R. 194-95).

On April 12, 2005, Dr. Ammar Aldaher, an internist and consulting physician, examined the claimant. (R. 160). Dr. Aldaher reported that the claimant's pain did not radiate to the lower extremities, and that she had no paresthesias, no numbness, and no muscle weakness. *Id*. He also reported that her current range of motion did not indicate any abnormality in the lumbosacral

area. (R. 160-61). Dr. Aldaher concluded that the claimant was able to do work-related activities such as sitting, standing, walking, lifting, carrying and handling objects. (R. 162).

On August 30, 2006, the claimant visited Dr. Hofammann for a follow-up appointment; the claimant had not visited Dr. Hofammann since January 2005. (R. 243). Dr. Hofammann noted that the claimant's pain was localized over the lumbar sacral area of her spine and that the feeling in her legs was good. *Id*. Dr. Hofammann concluded that the claimant's situation appeared non-operative, that she should resume physical therapy, and that she should follow-up with Dr. Ann Davis for routine medical management needs. *Id*.

### *The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 22). At the hearing, the claimant testified that her pain was in the small of her back and radiated from her thighs down to her knees. (R. 258). She testified that the radiation was constant in her left leg, and that on an average day her pain reached a level of seven or eight on a scale of one to ten. *Id*.

The claimant testified that she participated in physical therapy, but stopped because "it just hurt worse to try to do physical therapy than just to not." (R. 260, 271). She testified that she takes hot baths, uses a heating pad, and takes Naprosyn and Flexeri in addition to Aleve or Tylenol. (R. 259-60, 73). She indicated that although these methods help her pain, they do not alleviate it completely, nor do they provide the same amount of relief as Lortab. (R. 259).

The claimant testified that she can stand for five to ten minutes at a time and sit for approximately fifteen minutes at a time. (R. 261, 263-64). She also testified that after sitting up for an hour-and-a-half to two hours, she needs to lie down for fifteen or thirty minutes. (R. 289).

The claimant testified that she did not attempt to squat or stoop, but could walk a half block, could climb stairs slowly, and could bend over. (R. 263, 74).

A vocational expert, Mr. Hare, testified concerning the type and availability of jobs that the claimant was able to perform. (R. 282-90). He stated that her truck driving skills may be transferable to "lighter driving vehicles." (R. 282). The ALJ asked Mr. Hare to assume that the claimant was a younger individual with a GED, had mild to moderate pain, needed to work in a temperature-controlled environment, and could only occasionally bend, stoop, squat, or climb. (R. 283). Mr. Hare responded that under these constraints, the claimant could perform a truck driving job, but would not be capable of performing any other medium work opportunities. *Id*. The ALJ then asked Mr. Hare to identify any light work opportunities that he believed the claimant could perform. He replied that the claimant could work as a routing clerk, a ticket seller, or an information clerk. (R. 284-85). The ALJ also asked Mr. Hare to identify any sedentary work opportunities that the claimant could perform. (R. 284). Mr. Hare stated that the claimant could work as a surveillance system monitor, a cuff folder, or a dowel inspector. *Id*.

The ALJ further questioned Mr. Hare by asking him to identify employment opportunities that the claimant could perform if she could only occasionally push or pull using her upper and lower extremities. (R. 285). Mr. Hare responded that the claimant could still work as a ticket seller or information clerk. *Id*. Then the ALJ asked how the claimant's employment opportunities would be impacted if she had an option to sit or stand. *Id*. Mr. Hare replied that the claimant would still be able to work as an information clerk, a surveillance system monitor, or a dowel inspector, but would not be able to work as a truck driver. *Id*. Finally, the ALJ asked Mr. Hare to identify employment opportunities available if the claimant was unable to bend, stoop, squat,

climb, or push or pull with her upper and lower extremities. (R. 286). Mr. Hare replied that these limitations would restrict the claimant's employment options to that of a surveillance system monitor. (R. 287).

After the ALJ questioned Mr. Hare concerning the claimant's specific employment opportunities, he hypothesized a situation in which the court found the claimant's pain to be moderately severe to severe and asked Mr. Hare to describe the impact such a finding would have on the claimant's ability to work. *Id*. Mr. Hare responded that pain of this degree would generally preclude all work. *Id*.

The ALJ concluded his examination of Mr. Hare by asking how an individual's need to lie down for an hour during the work day would impact her capability to work in jobs in the light or sedentary categories. (R. 288-89). Mr. Hare replied that an employer could possibly accommodate a need to lie down during the lunch hour, but likely would not accommodate such a need at other times during the workday. (R. 289). Specifically, Mr. Hare testified that the claimant's need to lie down for fifteen to thirty minutes every two hours would preclude all work. (R. 290).

*The ALJ's Decision*

On April 25, 2007, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 26). First, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of her disability. *Id*. Next, the ALJ found that the claimant's annular tear at L4-5, disk herniation at L5-S1, and depression qualified as severe impairments; he concluded, however, that these impairments did not singly or in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments. *Id*.

The ALJ next considered the claimant's subjective allegations of pain to determine whether she had the residual functional capacity to perform past relevant work. *Id*. The ALJ found that the claimant "experienced an underlying medical condition which could reasonably be expected to result in some pain and limitations," but that the "evidence on the record, considered as a whole, fail[ed] to corroborate the degree of severity asserted." *Id*.

To support his conclusion, the ALJ first referenced the treatment notes of Dr. Hofammann and Dr. Aldaher. The ALJ found that Dr. Hofammann's records indicated less than severe pain because (1) "the claimant's back problems were not significant enough for her to desire surgery," (2) the doctor recommended over-the-counter medications, and (3) the doctor reported that he would "refer her for surgical consideration if and when the problem [was] bad enough." *Id*. The ALJ found that Dr. Aldaher's records also supported his conclusion because they indicated (1) the claimant was "able to perform work-related activities such as sitting, standing, walking, lifting, carrying, and handling objects," (2) had intact range of motion, (3) had normal reflexes and leg raising, and (4) had no limp, abnormal ambulation, spasm, deformity of the back, muscle weakness, or muscle atrophy. (R. 26). The ALJ concluded that both Dr. Hofammann's and Dr. Aldaher's opinions were "well supported by the medical evidence as a whole" and thus "entitled to great weight." *Id*.

Based on the reports of Dr. Hofammann and Dr. Aldaher, the ALJ concluded that the claimant's subjective allegations of pain were not "entirely credible." *Id*. He noted that although objective medical evidence did indicate back problems, the problems were not "very serious." *Id*. Thus, the inconsistency between the objective medical evidence and the claimant's subjective allegations undermined her credibility "regarding the presence of chronic moderately severe to

9

severe pain." *Id*.

The ALJ found that the claimant suffers from medical impairments that produce "no more than mild to, at most, moderate pain provided she abstains from continuous bending, stooping, squatting, or climbing and excessive exertional activity." (R. 28). The ALJ concluded that the claimant's impairments prevent her from performing skilled work, but that she has the residual functional capacity to perform light work provided she is in a temperature-controlled environment; can alternate between sitting and standing; and only occasionally bends, stoops, squats, climbs, or uses her upper or lower extremities to push and pull. *Id*. Based on these findings and testimony from the vocational expert, the ALJ concluded that the claimant retains the capacity for work that exists in significant numbers in the national economy and, therefore, is not disabled under the Social Security Act. (R. 29).

## VI. DISCUSSION

The claimant argues that the ALJ improperly applied the Eleventh Circuit's three-part pain standard. To the contrary, this court finds that the ALJ properly applied the pain standard and that substantial evidence supports his decision.

The three-part pain standard applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1219, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id*. (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies

the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

In applying the three-part standard, if the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true. *Id*.

In this case, the ALJ conceded that the claimant suffers from an underlying medical condition capable of generating pain; however, he found that the entirety of the medical evidence failed to support the claimant's alleged severity of pain.

The ALJ explicitly articulated his reasons for discrediting the claimant's alleged severity of pain. First, he referenced the claimant's visit to Dr. Hofammann on January 12, 2005 and noted that the doctor prescribed only over-the-counter medication. He also noted the claimant's unwillingness to consider surgery as well as Dr. Hofammann's comment that he would refer the claimant for surgical consideration "if and when the problem is bad enough." The ALJ reasoned that if the claimant's pain were as severe as she alleged, not only would she have been more amenable to surgery, but Dr. Hofammann would have prescribed stronger pain medication and insisted on referral to a surgeon.

Next, the ALJ considered the claimant's visit to Dr. Aldaher on April 12, 2005. The ALJ recognized that Dr. Aldaher found the claimant capable of performing work-related activities including sitting, standing, walking, lifting, carrying, and handling objects. In addition, Dr. Aldaher found the claimant's range of motion, ambulation, reflexes, and leg raising to be normal and noted that she did not limp or suffer from deformity of the back, muscle weakness, or muscle atrophy. The

11

ALJ reasoned that Dr. Aldaher's opinion supported the findings of Dr. Hofammann and further indicated that the claimant's pain was not as severe as she alleged.

Finally, the ALJ considered the claimant's visit to the emergency room on April 10, 2005 and found that, although she alleged severe pain during her visit, the physicians reported she was experiencing only moderate pain. Once again, the ALJ reasoned that if the claimant's pain were severe, the physician's report would have corroborated her allegations. The ALJ concluded that the claimant's underlying medical condition could indeed be expected to result in "some pain and limitations," but that "substantial evidence on the record, considered as a whole" did not "corroborate the degree of severity asserted." Furthermore, he found that the lack of objective medical evidence supporting the claimant's allegations of severe pain ultimately undermined the credibility of her statements regarding its presence.

Based on the explicit findings of the ALJ, this court concludes that he properly applied the Eleventh Circuit's three-part pain standard and that substantial evidence supports his decision. Therefore, this court affirms the decision of the Commissioner.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED.

A separate order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 9th day of July 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE